VIRGINIA M. MACARTHUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 8041.   Promulgated February 10, 1947.

*James McCollister, Esq.*, for the petitioner.
*Maurice S. Bush, Esq.*, for the respondent.

## OPINION.

Disney, *Judge*: The effect of section 22 (b) (2) of the Internal Revenue Code[1] is that of amounts received under an annuity the person receiving shall pay income tax upon 3 per cent "of the aggregate premiums or consideration paid for such annuity" and may exclude the remainder of the annuity from gross income (until the aggregate amount excluded equals the premiums or consideration paid, a situation not involved in this case). The petitioner here, after the death of her mother in 1940, received in 1941, the year here involved, a total of $2,034.96 upon the two annuities purchased by her mother and herself. Though two policies were involved, each cost $25,000, and the question presented is the same as to each, so in discussing the matter we at times refer to the policies as one and use the aggregate amount involved in both. The petitioner, in substance, contends that the 3 per cent to be reported as income by her should be based upon the cost to her of annuities for the period of her life after the death of her mother, and not upon the $50,000 consideration actually paid for the two annuities purchased by her and her mother. This she argues is the true meaning of "such annuity" in section 22 (b) (2), and she contends that the Commissioner's interpretation (that is, in effect, that the annuity referred to as basis of the 3 per cent is the one actually purchased) is contrary to the statutory scheme and the cases. The substance of the petitioner's view is that each of the annuity contracts purchased consisted in reality of two contracts, one with the mother for her life and the other providing a deferred interest in the petitioner, to begin at the date of her

---

[1] SEC. 22. GROSS INCOME.

* * * * * * *

(b) Exclusions From Gross Income.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

* * * * * * *

(2) Annuities, etc.—

* * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *

mother's death. In line with this view, the petitioner attempted to prove that at the date of the first policy, December 24, 1936, she could have purchased a survivorship annuity not coupled with a life annuity, to commence payments after the death of her mother, at the rate of $84.58 a month, for the sum of $9,609.66; and that at the date of, the purchase of the second contract, May 18, 1937, she could likewise have purchased a survivorship annuity contract, not coupled with a life annuity contract, paying $85 a month, for the sum of $9,623.50, and that therefore income payable by her should be only 3 per cent of the total, or $19,233.16. There was objection, and deferment of ruling, as to whether parol evidence should be admitted to prove the true amount of consideration, and as to the qualifications of the witness (an actuary, but not a representative of either of the companies which sold the contracts here involved) testifying to the allocation of premiums paid for the policies. We overrule the objections and consider the evidence.

The evidence is, however, not greatly helpful. It is, in this respect, to the effect that the petitioner's mother, on the dates of actual purchase of the two $25,000 contracts, could have purchased, for a total sum of $30,958.17, life annuities paying the same rates as those purchased, but this does not necessarily prove that the petitioner could have purchased the annuities upon which she wishes to be taxed 3 per cent for the difference between $50,000 and $30,958.17. So far as this record shows, separate policies, rather than the combined policy purchased in each case, might have cost more in the aggregate than the combined policy. (Though the actuary's testimony assumed the age of the mother as 58½ and that of the daughter as 32½ years, whereas the Mutual Life contract used ages of 58 and 32 [on December 24, 1936], and the Prudential contract issued on May 18, 1937, showed the ages as 58¾ and 33; and though the actuary furnished evidence as to a contract producing $85 a month, whereas the Mutual Life Insurance Co. contract produced only $84.58 a month, we do not, considering the conclusions to which we hereinafter come, regard such differences in figures as of importance.) In addition, the computation of two parts of the annuity, as between mother and daughter, as furnished by the actuary, when added together totaled $25,123.54, instead of $25,000, thus indicating that the calculations were not by division of either contract actually purchased. Nor was it shown that either the Prudential or the Mutual Life of New York issued its contract upon the 3 per cent basis, with expenses of 6½ per cent, as supposed in the actuary's computations. The evidence attempting to demonstrate allocation of each of the contracts purchased as between petitioner and her mother was decidedly vague and inconclusive; and we are unable to base conclusions upon it.

Moreover, in our view, the petitioner has failed to demonstrate the right to limit her taxation to 3 per cent of some figure representing cost of an annuity after her mother's demise. The statute speaks of the aggregate premiums or consideration paid for *such annuity*. We consider this to refer to the *annuity purchased*. *F. A. Gillespie*, 38 B. T. A. 673. Of course, if proof is made that the consideration or premiums for the annuity purchased amount to less than some other figure involved, then under the statute the 3 per cent will be applied only to such premiums, *Maud Gillespie*, 43 B. T. A. 399, in which evidence was adduced that only a part of the property paid was paid for the annuity. There was evidence that the excess was considered a gift or contribution for children and grandchildren, though we found it unnecessary to denominate such excess as gift, or contribution to capital. Here, however, there can be no doubt that the $25,000 involved in each contract was paid *for the contract*. No part was gift. No part was anything but consideration for what was purchased. It was premium or consideration for the annuity. It would be stretching the idea of the *Maud Gillespie* case, *supra*, beyond reason to hold that, because the contract purchased was for the benefit of two people, as to one the money paid could be considered something else than premium or consideration for the annuity, merely because possibly each of the parties might have purchased a contract different from this one they did buy. The contracts were single and not divisible, as shown by the language that *an* annuity would be paid, terminating with death of the last annuitant. There is no evidence that either the Prudential or the Mutual Life calculated the annuity contracts on the basis of a division between the life expectancies of the mother and daughter, as petitioner's theory involves. In our view they may not be divided, as petitioner contends.

The petitioner urges that such a conclusion is at war with Congressional intent, which was, it is argued, that the annuitant should recover his investment, which would not, under the above conclusion, eventuate in the lifetime of petitioner. In our opinion the Congressional intent was primarily to tax a reasonable portion of the return upon the investment, but to recognize that some part might be capital. Therefore, considering that 3 per cent was a reasonable return upon an investment, Congress intended that to that extent the annuity received should be taxable, with exclusion from gross income above 3 per cent. Whether the capital would eventually all be recovered was, in our opinion, no primary concern. It might, or it might not, dependent upon longevity. We are not impressed with petitioner's argument on the point.

We conclude and hold that petitioner has not shown error in respondent's contention that each of the contracts here in question was a single contract and that the aggregate premiums or consideration paid for the annuity contracts was $50,000.

*Decision will be entered under Rule 50.*